# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LINDA M. KRAWCZAK,** : | |
| : | |
| Plaintiff : | CIVIL ACTION 1: 04-CV-2432 |
| : | |
| v. : | (Judge Kane) |
| : | |
| **JO ANNE BARNHART,** : | |
| **Commissioner of Social Security,** : | |
| : | |
| Defendant : | |

## MEMORANDUM AND ORDER

Before the Court are Magistrate Judge J. Andrew Smyser's Report and Recommendation (Doc. No. 9) and Plaintiff's Objections thereto (Doc. No. 10). For the reasons discussed below, the Court declines to adopt entirely the reasoning of Judge Smyser's Report and Recommendation. However, for the reasons set forth below, the Court will overrule Plaintiff's Objections, and affirm the Commissioner's decision to deny Plaintiff's application for disability benefits.

## I.    BACKGROUND

### A.    Procedural Background

Plaintiff brought this civil action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") to deny Plaintiff's claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.

On September 25, 2002, Plaintiff applied for disability insurance benefits pursuant to sections 416(I) and 426 of the Social Security Act. 42 U.S.C. §§ 416(I), 423. Plaintiff alleged disability due to anxiety, depression, diarrhea or irritable bowel syndrome, hypoglycemia, agoraphobia, obsessive-

compulsive traits, and dysthymia.  On February 24, 2003, Defendant denied Plaintiff's claim for disability insurance upon determining that Plaintiff's condition was not disabling on any date through December 31, 2002, and that Plaintiff has not been treated for any medical condition for over five years.  (Doc. No. 5, Record of Transcript at 33) (hereinafter "R. at __").

On January 27, 2004, an Administrative Law Judge ("ALJ") held a hearing on Plaintiff's application.  The ALJ issued her opinion on January 28, 2004, denying Plaintiff disability benefits based on the determination that Plaintiff does not have a medically determinable disability.  The ALJ found at step one of the five-step sequential process for evaluating disability that Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability.  (R. at 25); see also 20 C.F.R. § 404.1520 (setting forth the five-step evaluation process).   At the second step of the analytical process, the ALJ found that Plaintiff did not have any impairment or impairments that significantly limit Plaintiff's basic work-related abilities and, therefore, she did not have a severe impairment.  (R. at 25.)  In finding that Plaintiff did not have a severe impairment, the ALJ found "no indication in the medical record that the claimant complained of related symptoms, or that she required significant ongoing treatments for these symptoms during the period following her alleged onset date of November 1, 1997, until December 31, 2002, her date last insured."  (R. at 22.)  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (R. at 16.)

Plaintiff filed her complaint and supporting brief with this Court on November 8, 2004, challenging:  (1) the ALJ's finding that Plaintiff's anxiety, depression, and agoraphobia are not medically determinable impairments; (2) the ALJ's failure to consider medical evidence relating to the period prior to the onset date; (3) the assigning of limited weight to Plaintiff's therapist and lay witness; and (4) the

2

ALJ's assessment of Plaintiff's credibility. (Doc. No. 6.) The Commissioner filed an answer to the complaint and a copy of the administrative record on January 1, 2005. On April 15, 2005, Judge Smyser issued his Report and Recommendation. In his recommendation to deny Plaintiff's appeal, Judge Smyser found, inter alia, that the "ALJ did by inference refer to the reports from the period of time prior to the alleged onset date in her statement using the November 1, 1997 onset date as a relevant factor." (Doc. No. 9, at 9.) Subsequently, Plaintiff filed Objections to the Report and Recommendation (Doc. No. 10) and a brief in support of review (Doc. No. 11), to which Defendant filed a response on May 12, 2005 (Doc. No. 12).

### B.     Factual Background

Plaintiff was born on November 6, 1951, and is married. Plaintiff has alleged that she suffers from anxiety, depression, diarrhea or irritable bowel syndrome, hypoglycemia, agoraphobia, obsessive-compulsive traits, and dysthymia. (Doc. No. 1.) Plaintiff has alleged an onset date of November 1, 1997, and a last insured date of December, 2002. (Doc. No. 6.) Prior to the alleged onset date, Plaintiff worked for Kmart as a sales clerk for approximately twenty years and subsequently as a customer service representative with a credit company for seven years. Plaintiff testified she has not worked or had any earnings since her alleged November 1, 1997 onset date.

Plaintiff began seeing Dr. Yurek, a family physician, sometime between 1993 and 1995. On September 29, 1997, Dr Yurek, referred Plaintiff to Dr. Levin, a psychiatrist, to treat her symptoms of depression and anxiety. (R. at 170.) Following the referral, Dr. Yurek's medical records are bereft of any complaints about symptoms related to depression or anxiety. (R. at 111-13.) Plaintiff testified that she last saw Dr. Levin in the winter of 1998. Plaintiff claims that upon telling Dr. Levin that she quit her

job, Dr. Levin told Plaintiff she no longer needed to be seen and tapered her off her medication. (R. at 170.) Although the record is completely void of medical records from Dr. Levin, Plaintiff testified that Dr. Levin said Plaintiff was fine because she was no longer working. (R. at 170.)

Plaintiff did not receive any further treatment for depression or anxiety until April 24, 2002. (R. at 172.) Plaintiff testified that she did not seek further treatment due to financial constraints; however, Plaintiff testified that her husband's annual income was approximately $55,000 and their mortgage was less than $450 per month. (R. at 175.) In addition, Plaintiff's witness, Ms. Suhrie, testified that Plaintiff and her husband spent money on VCRs, television, CDs, DVDs, and substantial amounts on groceries and gourmet foods. (R. at 191.)

In April, 2002, Plaintiff began seeing a therapist, Vic Cardinale,[1] for one hour every two weeks. In a letter dated December 10, 2002, Mr. Cardinale indicated that Plaintiff experienced daily degrees of stress, depression, low mood and energy, anxiety, difficulty with concentration and motivation, and problems with task completion. However, in a December 10, 2002 mental assessment, Mr Cardinale indicated that, other than poor to no ability to deal with work stresses, Plaintiff had fair to good abilities in the areas of making occupational, performance, and personal-social adjustments. (R. at 130-31.)

In February 2003, Plaintiff was evaluated by James W. Nutter, Ed. D., a consultative examiner, who indicated that Plaintiff did not evidence gross or debilitating depression but did evidence anxiety reactions. (R. at 134.) Dr. Nutter submitted a mental assessment on February 11, 2003, in which he

---

[1] Mr. Cardinale was not a licensed psychologist at this time.

indicated that, other than poor to no ability to understand, remember and carry out complex job instructions, the claimant has fair to good abilities in the areas of making occupational, performance, and personal-social adjustments. (R. at 135-36.)

In February 2003, Plaintiff was evaluated by Salvatore Cullari, Ph.D., a consultative examiner. Dr. Cullari found that Plaintiff exhibited only mild limitations in daily living activities, social functioning, concentration, and exhibited no episodes of loss of psychological balance. (R. at 147.) Dr. Cullari concluded that "there was no objective evidence to support a significant depressive or panic disorder." (R. at 149.)

## II.     STANDARD OF REVIEW

The Commissioner's decision to deny benefits must be affirmed if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)). A single piece of evidence is insufficient to support the decision if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966).

When objections to a report and recommendation have been filed, the Court must make a de novo consideration of those portions of the report to which the objections relate. Carter v. Apfel, 220

F. Supp. 2d 393, 395 (M.D. Pa. 2000) (citing Samples v. Deicks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989)).  In so doing, the Court may accept, reject, or modify the findings and recommendations contained in the report.  28 U.S.C. § 636(b)(1); Local Rule 72.1.  Further, in the exercise of sound judicial discretion, the Court may rely on the Magistrate Judge's proposed findings and recommendations.  United States v. Raddatz, 447 U.S. 667, 676 (1980); Govey v. Clark, 749 F.2d 5, 7 (3d Cir. 1984) ("[t]he Supreme Court has recognized the discretion afforded federal district courts in their use of magistrate's reports").

### III.  DISCUSSION

In determining whether an applicant is disabled within the meaning of the Social Security Act, and therefore eligible for disability benefits, the Federal Regulations provide a five-step sequential evaluation process that requires the Commissioner to inquire, in turn, whether an applicant:  (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is severe; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or her past relevant work; and (5) is able to perform work existing in significant numbers in the national economy.  See 20 C.F.R. §§ 404.1520(a)(4); McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).  It is undisputed that Plaintiff has not engaged in substantial gainful activity during the relevant time period. (R. at 24.)  The parties dispute whether the ALJ erred in:  (A) finding that Plaintiff's alleged anxiety, depression, and agoraphobia are not medically determinable impairments; (B) failing to consider the medical evidence of Dr. Yurek; (C) the assessment of Plaintiff's credibility; and (D) the assignment of weight to Plaintiff's witness and therapist.

### A.     Medically Determinable Impairments

Plaintiff asserts that she is entitled to disability benefits based on her depression, anxiety, and agoraphobia. The ALJ found that there was no indication of Plaintiff's disability in the medical record during the time period Plaintiff was alleged to be disabled. As a result, the ALJ concluded that Plaintiff does not have a medically determinable disability.

At the second step of the five-step evaluation process, a claimant must prove the presence of a medically determinable impairment in order to receive disability benefits. 20 C.F.R. § 404.1520(a)(4). In order to prove such a disability, a claimant must "provide medical evidence showing you have an impairment(s) and how severe it is <u>during the time you say that you are disabled</u>." 20 C.F.R. § 404.1512(c) (emphasis added). A severe impairment is an impairment or a combination of impairments that significantly limits a claimant's physical or mental ability to do basic work activities for a continuous period of not less than 12 months. See 20 C.F.R. §§ 404.1520(c), 404.1505(a). However, if a claimant fails to prove such an impairment, then the claimant will be found not disabled for purposes of disability benefits. 20 C.F.R. § 404.1520(a)(4)(ii).

Plaintiff has alleged an onset date of November 1, 1997, and date of last insured as December 31, 2002. Plaintiff bears the initial burden of establishing, through medical evidence, the existence of a severe impairment during this time period ("relevant time period"). 20 C.F.R. § 404.1512(c). Plaintiff undertook to meet this burden by presenting Dr. Yurek's progress notes, purporting to demonstrate disability during the period from February 7, 1997, through October 8, 1997. (Doc. No. 6; R. at 111-13.) As additional support, Plaintiff presented Mr. Cardinale's December 10, 2002 report. (R. at

7

128-31.) Despite the need to show that she suffered a continuous disability, Plaintiff presented no additional evidence concerning the relevant time period between November 1997 and December 2002. Plaintiff testified that the lack of medical evidence during this period was the result of a lack of financial resources to pay for treatment. (R. at 172.) However, the ALJ found this statement incredible upon consideration of the annual income of Plaintiff's husband, their relatively low mortgage payment, and testimony by Plaintiff's witness about Plaintiff's profligate spending habits. (R. at 23.)

Although Defendant is responsible for developing a complete medical history,[2] Plaintiff has failed to meet the requirement of providing medical evidence that illustrates an impairment during the time she claims she was impaired. See 20 C.F.R. § 404.1512(c). The Court agrees with the ALJ that "there is no indication in the medical record that the claimant complained of related symptoms, or that she required significant ongoing treatment for these symptoms during the period following her alleged onset date of November 1, 1997, until December 31, 2002, her date last insured." (R. at 22.)

In addition to the lack of medical evidence supporting a disability during the relevant time period, the ALJ found that the evidence of record as a whole is inconsistent with a medically determinable disability. In reaching her conclusion, the ALJ considered the mental assessments submitted by the consultative examiner, Dr. Nutter, Plaintiff's therapist, Mr. Cardinale, and the state agency, represented by Dr. Cullari. The ALJ discussed each assessment separately and assigned evidentiary weight as follows: Dr. Nutter's assessment received limited weight; Mr. Cardinale's

---

[2]See 20 C.F.R. § 404.1512(d) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least 12 months preceding the month in which you file you application").

assessment received little weight; and Dr. Cullari's assessment received significant weight.[3]  (R. at 24.) In addition, the ALJ considered Plaintiff's testimony and the testimony of Ms. Suhrie in conjunction with the other evidence of record to determine that Plaintiff's "impairments . . . do not cause more than a minimal degree of limitation in the ability to perform basic work activities."  (R. at 23-24.)

Plaintiff failed to furnish medical evidence that could be used to reach a conclusion about Plaintiff's impairments during the time she was alleged to be disabled.  The ALJ considered the relevant evidence and concluded that Plaintiff lacked a medically determinable disability.  Upon a de novo review of the entire record, the Court finds that a reasonable mind might accept the evidence presented as adequate to reach the conclusion that Plaintiff did not have a medically determinable disability during the relevant time period.  See Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (substantial evidence is "means such relevant evidence as a reasonable mind might accept as adequate"). Accordingly, the ALJ's decision to deny disability benefits to Plaintiff will be affirmed.

**B.     Consideration of Medical Evidence Prior to the On Set Date**

Plaintiff asserts that the ALJ erred by failing to mention or discuss the medical report of Dr. Yurek and that this error requires the Court to remand the case to the ALJ.   In reaching a conclusion about a claimant's impairments, the ALJ must explain the reasons for its decision and which evidence was accepted and rejected.  See Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981).  Thus, the ALJ has a duty to hear and evaluate all relevant evidence in order to determine whether an applicant is

---

[3]In her evaluation of evidentiary weight, the ALJ noted that Plaintiff's therapist was not yet a licensed psychologist and therefore not an acceptable medical source.  (R. at 24.); see 20 C.F.R. § 404.1513(a) (acceptable medical sources are limited to:  licensed physicians, licensed psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists).

eligible for disability benefits.

In reaching a conclusion about a claimant's alleged disability, the ALJ's decision must be accompanied by "not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." Cotter, 642 F.2d 700, 706.  As Plaintiff points out in her brief (Doc. No. 11), a reviewing court is "unable to conduct our substantial evidence review if the ALJ fails to identify the evidence he or she rejects and the reason for its rejection." Walton v. Halter,  243 F.3d 703, 710 (3d Cir. 2001) (citing omitted).  Therefore, as factfinder, the ALJ must consider and evaluate the medical evidence in the record and "[h]is failure to do so will leave little choice but to remand for a more comprehensive analysis of the evidence." Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001).

At the second step of the five-step evaluation process, a claimant bears the burden of providing medical evidence to support a finding of disability during the time period she claims to be disabled.  20 C.F. R. § 404.1512(c).  The Federal Regulations provide:

> You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled.  You must provide evidence showing how your impairment(s) affect your functioning during the time you say that you are disabled, and any other information that we need to decide your case.

20 C.F.R. § 404.1512(c).  Before making a determination about a claimant's disability, the Commissioner is responsible for developing a complete medical history.  See 20 C.F.R. § 404.1512(d).  However, a complete medical history is defined as "your medical source(s) covering at least the 12 months preceding the month in which you file your application" and if the alleged disability is alleged to have begun less than 12 months before the application date, then "we will develop your

10

complete medical history beginning with the month you say your disability began unless we have reason to believe your disability began earlier." 20 C.F.R. § 404.1512(d)(2).  It is clear from the regulations that in determining the presence of a disability, the ALJ must consider evidence during the time the plaintiff claims to have been disabled.

In this case, Plaintiff submitted Dr. Yurek's progress notes purporting to demonstrate a disability during the period from February 7, 1997, through October 8, 1997, which period precedes the alleged onset date.  (Doc. No. 6; R. at 111-13.)  Plaintiff argues that the ALJ erred by failing to mention or discuss Dr. Yurek's report.  In his Report and Recommendation, Magistrate Judge Smyser opined that an "inference could be drawn that the ALJ had not necessarily found that there were not medically determinable impairments during the period before the onset date." (Doc. No. 9.)  However, an ALJ must indicate both the evidence that was accepted which supports the result and the evidence that was rejected.  Cotter, 642 F.2d at 706.  The Court finds that drawing inferences from the ALJ's opinion is inconsistent with the case law in the Third Circuit.  See Walton, 243 F.3d at 710 (a reviewing court is "unable to conduct our substantial evidence review if the ALJ fails to identify the evidence he or she rejects and the reason for its rejection").  Accordingly, the Court will decline to adopt Magistrate Judge Smyser's reasoning in this regard.

However, as discussed above, Plaintiff has failed to submit evidence to support a finding of disability during the relevant time period, between November 1, 1997, and December 31, 2002.  Dr. Yurek's progress notes are void of any complaints by Plaintiff about symptoms related to depression or anxiety during the relevant time period.  (R. at 111-13.)  As a result, the ALJ found that "there is no indication in the medical record that the claimant complained of related symptoms, or that she required

significant ongoing treatment for these symptoms during the period" Plaintiff says she was disabled. (R. at 22.)  Further, the ALJ found that the "symptoms that are supported by medically determinable impairments . . . are not entirely credible concerning the intensity, duration and limiting effects of the symptoms." (Id.)

As required by the regulations, the ALJ considered the evidence during the time Plaintiff said she was disabled in determining whether Plaintiff suffered from a severe impairment. See 20 C.F.R. § 404.1512(c).  Although an ALJ's decision must be accompanied by "not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected," Cotter, 642 F.2d 700, 706, the ALJ's statements about limiting the scope of inquiry to the relevant time period is a sufficient explanation of rejecting evidence preceding the onset date.  The Court notes that Plaintiff alleged an onset date of November 1, 1997, and the ALJ's consideration of evidence related to the relevant time period is consistent with the requirements found in the Federal Regulations.  See 20 C.F.R. § 404.1512(c).

### C.     Plaintiff's Credibility

Plaintiff contends that the ALJ erred in finding that Plaintiff was not entirely credible concerning the intensity, duration and limiting effects of her symptoms.  Notwithstanding Plaintiff's allegations of extensive limitations resulting from claimed symptoms of depression and anxiety, the ALJ found that the intensity, duration, and limiting effects of the symptoms were not supported by the medical evidence, Plaintiff's own testimony, and the testimony of Ms. Suhrie.  (R. at 22-23.)

An ALJ is required to assess a claimant's subjective complaints of pain and other symptoms. See 20 C.F.R. § 404.1529(c)(4).  In determining credibility of a claimant's subjective complaints of

pain and other symptoms, the ALJ must consider the entire case record, including objective medical evidence, claimant's own statements, statements and other information provided by treating or examining physicians or psychologists and other persons about symptoms and how they affect claimant, and any other relevant evidence in case record. See 20 C.F.R. § 404.1529(c)(4); Pachilis v. Barnhart, 268 F. Supp. 2d 473, 479 (E.D. Pa. 2003).

In this case, the ALJ found that the medical evidence of record did not support Plaintiff's allegations. Dr. Nutter, a consultative psychologist, stated "the claimant did not evidence gross or debilitating depression or anxiety and there were no clear reports of suicidal ideation, impulse control problems, delusional thinking, or hallucinations. (R. at 133-34.) Similarly, Dr. Cullari, a psychologist for the Commonwealth, also concluded that Plaintiff does not have a severe mental impairment.[4] (R. at 24, 149.) In addition, the ALJ considered the mental assessment submitted by Plaintiff's therapist, Mr. Cardinale. Although Plaintiff's therapist is not an acceptable medical source,[5] Mr. Cardinale indicated that, other than "poor/none" ability to deal with work stresses, the claimant has fair to good abilities in the areas of making occupational adjustments, making performance adjustments and making personal-social adjustments. (R. at 130-31.) Furthermore, there is no indication that Plaintiff sought treatment for depression or anxiety until April 2002, at which time she began counseling with Mr. Cardinale.

Plaintiff testified that she lacked financial resources to seek treatment for her depression during

---

[4] "There was no objective evidence to support a significant depressive or panic disorder. Thus, her allegations of an inability to work due to her mental condition is not fully credible." (R. at 149.)

[5] See 20 C.F.R. § 404.1513(a) (acceptable medical sources are limited to: licensed physicians, licensed psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists).

the relevant time period. However, Plaintiff also testified that her husband had an annual income of approximately $55,000, and that their monthly mortgage was only $449.00. (R. at 174-75.) In addition, Ms. Suhrie testified that Plaintiff spent large amounts of money on "toys" and "gourmet groceries." (R. at 191-192.) As a result, the ALJ found Plaintiff's reason for not seeking treatment during the relevant period lacked credibility.

The ALJ also found Plaintiff's allegations concerning her symptoms and limitations inconsistent with other statements she and Ms. Suhrie made. Plaintiff asserted that she is overwhelmed; cries all day; lacks energy; has suicidal thoughts; lacks motivation; cannot think clearly; has poor concentration; and has trouble staying on task. (R. at 23, 184-187.) However, Plaintiff also testified that she is able to cook, occasionally go shopping, and periodically perform household chores. (R. at 178.)

Upon a de novo review of the record, the Court finds that there were inconsistencies between Plaintiff's testimony, the medical evidence, and the testimony of Ms. Suhrie concerning Plaintiff's ability to engage in various daily activities. See 20 C.F.R. § 404.1529. Substantial evidence supported the ALJ's determination that claimant's subjective reports about her condition were not credible; claimant's reports of her incapacity diverged from the evidence or record, and her descriptions of her daily activities suggested she may not have been as limited in her activities as she alleged. Accordingly, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff was not credible as to her allegations of symptoms and limitations and therefore Plaintiff's objection will be overruled.

D.    **Assignment of Evidentiary Weight to Plaintiff's Witness and Therapist**

Plaintiff claims that the ALJ erred in the assignment of evidentiary weight to Plaintiff's witness and therapist. The ALJ gave limited weight to the testimony of Plaintiff's witness, Ms. Suhrie, and little

weight to the assessment submitted by Plaintiff's therapist, Mr. Cardinale.  (R. at 23-24.)

Although Plaintiff argues that the ALJ failed to state why she assigned limited weight to the testimony of Ms. Suhrie, the ALJ explained that weight was assigned to the witness's testimony only to the extent that it was supported by evidence of record.  (R. at 23.)  Ms. Suhrie testified that Plaintiff stopped taking care of herself as well as the house, she often did not get dressed, and was unable to make a decision or follow a schedule.  (R. at 22.)  However, Plaintiff testified that she goes grocery shopping and "would go out to lunch and to the mall" with Ms. Suhrie.  (R. at 179, 181.)  The testimony of Ms. Suhrie that Plaintiff suffers extreme mental functional limitations is inconsistent with the evidence of record.

Plaintiff also claims that the ALJ erred by assigning little weight to Mr. Cardinale's mental assessment of Plaintiff.  The ALJ gave Mr. Cardinale's assessment little weight because she found that he was not an acceptable medical source.[6]  (R. at 24.)  Plaintiff is responsible for providing acceptable medical and other evidence to determine whether she is disabled.  See 20 C.F.R. §§ 404.1512(a) and 404.1513(a).  The regulations provide that "[i]n addition to evidence from acceptable medical sources . . . we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work."  20 C.F.R. § 404.1513(d) (emphasis added).  Thus, evidence from other sources may be used to supplement acceptable medical evidence that establishes a medically determinable impairment.  See Williams v. Apfel, 98 F. Supp. 2d 625 (E.D. Pa. 2000) (holding that,

---

[6]Acceptable medical sources are limited to:  licensed physicians, licensed psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists.  See 20 C.F.R. § 404.1513(a).

while evidence from an acceptable medical source is necessary to determine whether a claimant is disabled, information from non-medical sources is acceptable as a supplement to the medical source).

It is undisputed that Mr. Cardinale is not an acceptable medical source and therefore unable to provide the requisite medical evidence. See 20 C.F.R. § 404.1513(a). As a result, Mr. Cardinale's assessment of Plaintiff may be used only to supplement medical evidence that establishes a medically determinable impairment. However, as discussed above, Plaintiff failed to furnish medical evidence that could be used to reach a conclusion about Plaintiff's impairments during the time she alleged to be disabled. See 20 C.F.R. § 404.1512(c). In addition, the ALJ found Mr. Cardinale's assessment inconsistent with the evidence of record, including Plaintiff's lack of treatment history and daily living activities during the time period in which she claims to be disabled. Consequently, the ALJ found that Mr. Cardinale's assessment was entitled to little weight. The Court finds that, upon de novo review of the entire record, the ALJ's decision is supported by substantial evidence. Accordingly, Plaintiff's objections will be overruled.

**IV.   CONCLUSION**

Based on a review of the entire record, including medical evidence submitted by Plaintiff, psychological assessments of examining psychologists, assessment of Plaintiff's therapist, testimony of Plaintiff's witness, and Plaintiffs own testimony, the Court determines that substantial evidence exists to support the ALJ's decision that Plaintiff does not have a medically determinable impairment for the purpose of disability benefits.

**V.   ORDER**

**AND NOW**, this 9th day of September, for the above reasons, **IT IS HEREBY**

**ORDERED THAT**:

1. The Court **DECLINES** to adopt the Report and Recommendation of Magistrate Judge Smyser in its entirety (Doc. No. 10).

2. Plaintiff's Objections to the Report and Recommendation (Doc. No. 11) are **OVERRULED**.

3. The ALJ's decision to deny Plaintiff's application for disability benefits is **AFFIRMED**.

3. The Clerk of the Court shall close the file.

    S/ Yvette Kane
Yvette Kane
United States District Judge